UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANUP MEHRA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 1:18-cv-0021 |
| v. | § | |
| | § | JURY TRIAL DEMAND |
| THOMAS C. ENNIS, WILLIAM DAVID | § | |
| CHRIST, JEFFREY S. BARBER, PAMELA L. | § | |
| NETZKY, DAWN E. HUDSON, CHRIS | § | |
| ELSHAW, JOHN K. HALEY, BEN CLARKE, | § | |
| ANDREW S. FRIEDMAN, AMPLIFY SNACK | § | |
| BRANDS, INC., ALPHABET MERGER SUB, | § | |
| INC., and THE HERSHEY COMPANY, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff, Anup Mehra, by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action against Amplify Snack Brands, Inc., ("Amplify" or the "Company") and Amplify's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(d)(4), and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Sections 14(e) and 20(a). Specifically, Defendants solicit the tendering of stockholder shares in connection with the proposed acquisition of the Company by Alphabet Merger Sub, Inc., a Delaware corporation ("Acquisition Sub"), a wholly owned subsidiary of The Hershey Company ("Hershey"), through a recommendation statement that omits material facts necessary to make

the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.    On December 18, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), by which Hershey would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Amplify common stock for $12.00 per Share (the "Merger Consideration"), net to the holder in cash, in a transaction valued at approximately 1.6 billion (the "Proposed Transaction"). The Tender Offer, commenced on January 2, 2017, and is scheduled to expire at 12:00 midnight, New York City time, on January 30, 2018.

3.    In connection with the commencement of the Tender Offer, on January 2, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia,* it fails to disclose material information concerning the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Jefferies LLC ("Jefferies"). Without this material information, Hershey stockholders will be forced to decide whether or not to tender their shares based upon materially incomplete and misleading information. The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

4.    For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the

Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has personal jurisdiction over each Defendant because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Amplify maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Amplify.

9. Thomas C. Ennis ("Ennis") is the Company's Chief Executive Officer, President, and has served as a member of Amplify's Board since July 2014.

10. William David Christ ("Christ") has served as a member of the Company's Board since July 2014. Mr. Christ joined TA Associates in 2003, where he now serves as a Managing Director, and is primarily focused on investments in the consumer products, retail and restaurant industries.

11. Jeffrey S. Barber ("Barber") has served as a member of the Company's Board since July 2014 and as chairman of the Board since April 2015. Mr. Barber joined TA Associates in 2001 and has served as a Managing Director since 2007.

12. Pamela L. Netzky ("Netzky") is Amplify's founder and has served on the Company's Board since July 2014.

13. Dawn E. Hudson ("Hudson") has served as a director of the Company since October 2014.

14. Chris Elshaw ("Elshaw") has served as a director of the Company since May 2015.

15. John K. Haley ("Haley") has served as a director of the Company since April 2015.

16. Ben Clarke ("Clarke") joined the Board as a director, effective as of September 1, 2017.

17. Andrew S. Friedman ("Friedman") has served as a director of the Company since July 2014.

18. Defendants referenced in ¶¶ 9 through 17 are collectively referred to as the Individual Defendants and/or the Board.

4

19. Amplify is a Delaware corporation based in Austin, Texas. It maintains principal executive offices at 500 West 5th Street, Suite 900, Austin, Texas, 78701. Amplify common stock is traded on the New York Stock Exchange under the ticker symbol "BETR." The Individual Defendants and Amplify are referred to collectively herein as "Defendants."

20. Defendant Alphabet Merger Sub, Inc., is a Delaware corporation and direct wholly owned subsidiary of Hershey and is a party to the Merger Agreement. Defendant Alphabet Merger Sub is named as a Defendant herein solely for the purpose of providing full and complete relief.

21. Defendant Hershey is a Delaware corporation and is a party to the Merger Agreement. Hershey is named as a Defendant herein solely for the purpose of providing full and complete relief.

## FACTUAL BACKGROUND

**The Sale Process**

22. In early 2017, Jefferies, an investment banking firm that had previously served as an underwriter in Amplify's 2015 IPO and 2016 secondary offering and as the Company's financial advisor in connection with prior transactions, alerted the Company's chief executive officer, Ennis, that certain industry participants might have interest in a potential strategic transaction with the Company.

23. Between January and March of 2017, the Company had contact with eleven large companies in the food industry regarding their possible interest in engaging in discussions regarding a potential strategic transaction. Of these eleven companies, six elected to enter into confidentiality agreements with the Company.

24. Over the next several months, Amplify and its representatives engaged in mutual due diligence with these companies and negotiated the various terms for a strategic transaction, and, by November 2017, only two companies remained in the bidding process, Hershey and an undisclosed corporation referred to in the Recommendation Statement as "Party B." Both Party B and Hershey submitted revised proposals in November 2017 and, during a December 1, 2017 board meeting, the Board set a second round bid deadline of December 12, 2017.

25. Also, during this December 1, 2017 board meeting, the independent directors of the Board met in executive session and continued a discussion with only representatives of Potter Anderson present. The independent directors ultimately determined that forming a special committee of the Board to oversee the Company's strategic process was not necessary at that time nor was it necessary for the independent directors to retain their own financial advisor.

26. On December 12, 2017, Hershey presented a written confirmation of its proposal at a price of $10.00 per share. The following day, Party B presented a revised written proposal at a price of $9.50 per share. Both proposals were conditioned upon obtaining an agreement from TA Associates at the time of signing to support the transaction and included drafts of the support agreements to be entered into between the respective entities and key stockholders of Amplify, including the stockholders affiliated with TA Associates (the "Support Agreements").

27. Following further negotiations, both Party B and Hershey increased their proposed purchase prices. Hershey submitted a revised proposal to acquire the Company for $12.00 per share, and Party B increased its offer to $10.50 per share. Despite further requests from Amplify and its representatives, both Party B and Hershey were unwilling to revise their proposals any further, and the Board determined to move forward with Hershey.

28.     On December 17, 2017, the Board held a meeting to discuss the final terms of the proposed transaction with Hershey.  After Jefferies reviewed its financial analysis of the $12.00 per share cash consideration with the Board and rendered an oral opinion, confirmed by delivery of a written opinion dated December 17, 2017, that the Proposed Transaction pursuant to the Merger Agreement was fair, from a financial point of view, to Amplify stockholders, the Board the Board unanimously: (i) determined and declared that the Merger Agreement, the Offer, the Merger and the Transactions are advisable and in the best interests of the Company and its stockholders; (ii) approved the Merger Agreement, the Offer, the Merger and the Proposed Transaction; (iii) approved and declared advisable the Merger Agreement; and (iv) resolved to recommend that the Company's stockholders accept the Offer and tender their Shares into the Offer.

29.     Later that day, the Merger Agreement was executed, and all signatories to the Support Agreements executed such agreements.

**The Proposed Transaction**

30.     In a joint press release dated December 18, 2017, the Company and Hershey announced that they had entered into the Merger Agreement the previous day.

31.     The announcement read, in relevant part:

> HERSHEY, Pa. and AUSTIN, Texas, Dec. 18, 2017 (GLOBE NEWSWIRE) -- The Hershey Company (NYSE:HSY) ("Hershey") and Amplify Snack Brands, Inc. (NYSE:BETR) ("Amplify") today announced that they have entered into a definitive agreement under which Hershey will acquire all outstanding shares of Amplify for $12.00 per share in cash.
>
> "The acquisition of Amplify and its product portfolio is an important step in our journey to becoming an innovative snacking powerhouse as together it will enable us to bring scale and category management capabilities to a key sub-segment of the warehouse snack aisle," said Michele Buck, The Hershey Company President and Chief Executive Officer. "Hershey's snack mix and meat snacks products, combined with Amplify's *Skinny Pop*, *Tyrrells,*

7

*Oatmega*, *Paqui* and other international brands, will allow us to capture more consumer snacking occasions by creating a broader portfolio of brands."

"Since Amplify's inception in 2014, our company's goal has been to bring transparency to our products, and clean ingredients and great tasting snacks to consumers," said Tom Ennis, Amplify Snack Brands, Inc. President and Chief Executive Officer. "This transaction is a continuation of our mission as Hershey also believes in bringing to consumers great-tasting snacks made with the best ingredients possible. Hershey is a great cultural partner for Amplify and I'm excited for our team who will have access to Hershey's marketing and go-to-market resources to take our brands to the next level."

This strategic acquisition is expected to be accretive to Hershey's financial targets given the growth trajectory and margin structure of Amplify's key products. Amplify's brands compete in many attractive food categories that are capitalizing on fast-growing trends in snacking with a focus on better-for-you products that deliver clean, simple and transparent ingredients as well as unique flavors and forms. Additionally, this combination brings customers a known brand building partner that invests in category management solutions to drive higher levels of conversion and velocity at retail.

Under the terms of the agreement between Hershey and Amplify, Hershey has agreed to acquire all of the outstanding shares of Amplify Snack Brands, Inc. for $12.00 per share, in a transaction structured as a tender offer followed by a merger, valued at approximately $1.6 billion, including net debt and including a make-whole payment of $76 million related to the Tax Receivable Agreement ("TRA"). Based on previously announced guidance, this represents a multiple of approximately 14.8-times 2017 Adjusted EBITDA including identified annual run-rate synergies of approximately $20 million expected to be generated over the next two years from cost savings and portfolio optimization. The transaction will be funded with cash on hand and new debt and is not expected to impact Hershey's current ratings. Hershey expects the transaction to be accretive to adjusted earnings per share-diluted, including transaction related non-cash amortization, in the first-year post closing with accretion increasing in year two. Adjusted earnings per share-diluted accretion in both years is substantially higher when excluding transaction related amortization. The acquisition is not expected to affect the previously announced full year 2017 outlooks provided in Hershey's and Amplify's third quarter earnings release and conference calls.

The agreement has been approved by the Boards of Directors of both companies. Affiliates of TA Associates, Amplify's largest stockholder, and key Amplify insiders, who collectively represent approximately 57%[3] of the outstanding shares, have agreed to tender their shares in the transaction. The transaction is subject to Amplify's stockholders tendering a majority of Amplify's outstanding shares on a fully diluted basis prior to the expiration of

the tender offer, certain regulatory approvals and other customary conditions, and is expected to close in the first quarter of 2018.

## THE MATERIALLY MISLEADING AND INCOMPLETE RECOMMENDATION STATEMENT

32. As noted previously, on January 2, 2017, the Company filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by Hershey. As alleged below and elsewhere herein, the Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow Amplify's stockholders to make an informed decision regarding the tendering of their shares. Designed to convince shareholders to tender their shares, the Recommendation Statement is rendered misleading by the omission of critical information concerning Amplify's Prospective Financial Information and the valuation analyses performed by Amplify's financial advisor. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Amplify's stockholders.

**Material Omissions Concerning Amplify's Prospective Financial Information**

33. Specifically, the Recommendation Statement fails to disclose critical information concerning the financial projections for the Company that were relied upon by the Board in recommending the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Amplify's stockholders that they would rely upon in deciding whether to tender their share.

34. Here, the Recommendation Statement provides projected values for Adjusted EBITDA, Adjusted EBIT, Adjusted Net Operating Profit After Tax, and Adjusted Unlevered Free Cash Flow, for projected financial information over the years 2018-2022. Although the

9

Recommendation Statement describes the various adjustments that were made to these non-GAAP measures and how they were calculated, it fails to disclose the line item projections for the calculations and fails to reconcile these non-GAAP projections to the most comparable GAAP measures.

35. Providing these non-GAAP metrics without fully disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projection to GAAP measures, makes the provided disclosures materially incomplete and misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Rather than disclose the information necessary to reconcile these measures, Defendants chose to omit this information.

36. Consequently, the Recommendation Statement provides Amplify stockholders a number of non-GAAP financial projections that make it extremely difficult for stockholders to assess the fairness of the Proposed Transaction. This is particularly problematic for Amplify stockholders, because the Board relied on these non-GAAP metrics in determining to enter into the Merger, and their incomplete disclosure is inherently misleading.

37. The omission of this information renders certain portions of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia,* the following sections of the Recommendation Statement: (i) "Opinion of the Company's Financial Advisor;" and (ii) "Certain Prospective Financial Information."

**Material Omissions Concerning Jefferies' Financial Analyses**

38. The Recommendation Statement describes Jefferies' fairness opinion and the various valuation analyses it performed in support of its opinions. However, the description of

Jefferies' fairness opinion and the underlying analyses omits key inputs and assumptions underlying these analyses. Without this information, as described below, Amplify public stockholders are being misled as to what weight, if any, to place on Jefferies' fairness opinions in determining whether to tender their shares. This omitted information, if disclosed, would significantly alter the total mix of information available to Amplify stockholders.

39. With respect to Jefferies' *Selected Public Companies Analysis*, the Recommendation Statement again fails to disclose the trading multiples Jefferies observed for each transaction included in the analysis.

40. Similarly, with respect to Jefferies' *Selected Precedent Transactions Analysis*, the Recommendation Statement again fails to disclose the trading multiples Jefferies observed for each transaction included in the analysis.

41. Finally, with respect to Jefferies' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 12.5% to 13.5%; (ii) the total amount of stock-based compensation that was treated as a cash expense in the analysis; (iii) the implied perpetuity growth rates resulting from the analysis; (iv) the line items utilized to calculate the Company's unlevered free cash flows.

42. When a bankers' endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company and allows stockholders to understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion. This information is, therefore, material and must be disclosed if Amplify stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

43. Without such undisclosed information, Amplify stockholders cannot evaluate for themselves whether the financial analyses performed by Jefferies were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which Jefferies' opinion and analyses should factor into their decision whether to tender their shares or pursue their appraisal rights.

44. The omission of this information renders certain portions of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia,* the following sections of the Recommendation Statement: (i) "Opinion of the Company's Financial Advisor;" and (ii) "Certain Prospective Financial Information."

**Material Omissions Concerning the Process**

45. Finally, the Recommendation Statement further fails to disclose the details of any employment-related discussions and negotiations that occurred between Hershey and Amplify executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Hershey's prior proposals or indications of interest mentioned management retention.

46. Communications regarding post-transaction employment opportunities during the negotiation of the underlying transaction must be disclosed to stockholders. This information is

12

necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of this information renders certain portions of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Past Contracts, Transactions, Negotiations and Agreements;" and (ii) "Background of the Transactions; Reasons for the Recommendation of the Board."

48. Without disclosure of the above referenced information, the Recommendation Statement violates SEC regulations and materially misleads Amplify stockholders.

49. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…." 15 U.S.C. § 78n(e).

52. As discussed above, Amplify filed and delivered the Recommendation Statement to its stockholders which Defendants knew, or recklessly disregarded, contained material omissions and misstatements as set forth above.

53. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54. The Recommendation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, in connection with the Merger as set forth above.

55. In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

56. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

57. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

58. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

### Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

61. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

62. The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

63. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

15

therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

64. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

### Against the Individual Defendants for
### Violations of § 20(a) of the 1934 Act

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Amplify within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Amplify and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

69. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(A) declaring that the Recommendation Statement is materially false or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 9, 2018.

Respectfully submitted,

*/s/ Thomas E. Bilek*
Thomas E. Bilek
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC  20007
Tel: (202) 524-4290
Fax: (202) 337-1567